IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE J. LARUE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-01039 |
| | § | |
| COLLATERAL RECOVERY TEAM, | § | |
| LLC, DANIEL BLISS, and CREDIT | § | |
| ACCEPTANCE CORPORATION,, | § | |
| | § | |
| *Defendants.* | § | |

---

DECLARATION OF KELLY NAMEL PURSUANT TO
28 U.S.C. § 1746

---

I, Kelly Namel, being of full age and competent in all respects, after first being duly sworn according to law, upon my personal knowledge and review of relevant business records, depose and state as follows:

1.     I am currently employed as a Legal Assistant with Credit Acceptance Corporation ("Credit Acceptance") in its Corporate Legal Department. I am fully authorized to make this Affidavit on Credit Acceptance's behalf in that capacity. The facts set forth in this Affidavit are based on my personal knowledge and/or on my review of the business records of Credit Acceptance, which are made and/or kept in the ordinary course of business of Credit Acceptance to memorialize acts, transactions, occurrences, or events by individuals with personal knowledge of the acts, transactions occurrences or events, and who have a business duty to make the memorandum or record at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter.

2.     I have reviewed and am therefore familiar with the records of Credit Acceptance relating to the account of Stephanie Larue ("Plaintiff") under Account No. xxxx1513 (the "Account"). The Account is based upon a Retail Installment Contract Plaintiff executed relating to her purchase of a used 2012 BMW X5 (the "Vehicle") from Auto Nations, Inc. Credit Acceptance accepted assignment of the Contract.

Exhibit "A"

3.    Attached to this Affidavit are true and correct copies of the following documents relating to the Account:

    (a)    The Contract, which is attached as Exhibit A-1; and

    (b)    The Declaration Acknowledging Electronic Signature Process, which is attached as Exhibit A-2.

4.    Credit Acceptance has not received from Stephanie Larue any notification - written or otherwise - that she did not agree with or chose to reject the Arbitration Clause.

    I, Kelly Namel, declare and certify that I have read the foregoing Declaration and know its contents. Pursuant to 28 U.S.C. § 1746, I declare and certify under penalty of perjury that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NAUGHT**


Name:  Kelly Namel
Title:   Legal Assistant
**Credit Acceptance Corporation**

**Exhibit "A"**

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

ACCOUNT # ▮▮▮ 1513                                      LOT # Q2G

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| STEPHANIE J LARUE ▮▮▮▮ | N/A | AUTO NATIONS INC 6004 N SHEPHERD DR STE A HOUSTON, TX 77091 |

The Buyer and any Co-Buyer is referred to as "I", "my" or "me." The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY**
The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in Line 1 on Page 2. By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. I agree to pay you the Amount Financed, Finance Charge, and any other charges in this contract. I agree to make payments according to the Payment Schedule in this contract. If more than one person signs as a buyer, I agree to keep all the promises in this agreement even if the others do not.

I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

| Year | Make | Model | Vehicle Identification Number | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2012 | BMW | X5 | 5UXZV8C54CL425611 | ☐ New ☐ Demonstrator ☐ Factory ☐ Official/Executive ☒ Used | ☒ PERSONAL, FAMILY OR HOUSEHOLD ☐ BUSINESS OR COMMERCIAL ☐ AGRICULTURAL |

Trade-in: Year  N/A   Make  NISSAN   Model  MURANO   VIN  N/A   License No.  N/A

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down payment of $ 9,000.00   is |
|---|---|---|---|---|
| 20.49 % | $ 14,736.91 | $ 21,833.69 | $ 36,570.60 | $ 45,570.60 |

**Payment Schedule:** My payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
|  | $ |  |
|  | $ |  |
| 66 | $ 554.10 | Monthly Beginning   September 20, 2016 |

COPY OF ELECTRONIC ORIGINAL

**Security:** You will have a security interest in the motor vehicle being purchased.
**Late Charge:** If you do not receive my entire payment within 15 days after it is due (10 days if I am buying a heavy commercial vehicle), I will pay a late charge of 5% of the scheduled payment.
**Prepayment:** I can pay all that I owe early. If I do so, I can get a refund of part of the Finance Charge.
**Additional Information:** I will refer to this document for information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

*The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**PROPERTY INSURANCE: I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. The insurer must be authorized to do business in Texas.**

I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**LIABILITY INSURANCE**

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

TEXAS CREDIT ACEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

Sign ➡ Buyer's Initials  _SJL_

Buyer's Initials  _____

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

**Exhibit "A-1"**

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including any accessories, services, and taxes)       $ __30,619.69__ (1)

   $ __1,624.69__ for sales tax

   $ __N/A__ for __N/A__

   $ __N/A__ for __N/A__

   $ __N/A__ for __N/A__

2. Downpayment =

| | |
|---|---:|
| Gross trade-in | $ 3,000.00 |
| - Payoff by seller | $ 0.00 |
| = Net trade-in (if negative, enter "0" and see Line 4.A. below) | $ 3,000.00 |
| + Cash Down Payment | $ 6,000.00 |
| + Deferred Down Payment | $ N/A |
| + Mfrs. Rebate | $ N/A |
| + Other (describe) __N/A__ | $ N/A |
| Total Downpayment | $ 9,000.00 (2) |

3. Unpaid Balance of Cash Price (1 minus 2)      $ __21,619.69__ (3)

4. Other Charges Including Amounts Paid to Others on My Behalf (Seller may keep part of these amounts.):

| | |
|---|---:|
| A. Prior Credit or Lease Balance Paid to: N/A | $ N/A |
| B. Debt Cancellation Agreement Fee paid to Seller | $ N/A |
| C. Other Insurance Paid to the Insurance Company | $ N/A |
| D. Official Fees Paid to Government Agencies | $ N/A |
| E. Dealer's Inventory Tax (if not included in cash price) | $ 25.00 |
| F. Other taxes (if not included in cash price) | $ N/A |
| G. Government License and/or Registration Fees | $ 80.50 |
| H. Government Certificate of Title Fee | $ 33.00 |
| I. Government Vehicle Inspection Fees | $ 25.50 |
| J. Deputy Service Fee Paid to Dealer | $ N/A |
| K. Documentary Fee | $ 50.00 |

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

UN HONORARIO DE DOCUMENTACIÓN NO ES UN HONORARIO OFICIAL. UN HONORARIO DE DOCUMENTACIÓN NO ES REQUERIDO POR LA LEY, PERO PUEDE SER CARGADA AL COMPRADOR COMO GASTOS DE MANEJO DE DOCUMENTOS RELACIONADOS CON UNA VENTA. UN HONORARIO DE DOCUMENTACIÓN NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN ES REQUERIDA POR LA LEY.

COPY OF ELECTRONIC ORIGINAL

L. Other Charges (Seller must identify who is paid and describe purpose)

| to | for | |
|---|---|---:|
| Seller | Plate Transfer Fee | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |

Total Other Charges and Amounts Paid to Others on My Behalf      $ __214.00__ (4)

5. **Amount Financed** (3 + 4)      $ __21,833.69__ (5)

Taxes, title fee, license fee, and any state inspection fee *(except for $7.00 of each such inspection fee that will be retained by Seller)* will be paid by Seller to government agencies. Documentary fee and deputy service fee will be retained by Seller and the Seller may also retain parts of the insurance, service contracts, and other charges.

*OPTIONAL DEBT CANCELLATION AGREEMENT.* The granting of credit will not be dependent on the purchase of the debt cancellation agreement described below. It will not be provided unless I sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not I buy the debt cancellation agreement.

Term (in months): __N/A__      Fee: __N/A__

YOU WILL CANCEL CERTAIN AMOUNTS I OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. I can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later.

For the fee included above, I want the debt cancellation agreement.

Buyer's Signature: __****NOT PURCHASED - DO NOT SIGN****__      Date: ____

Co-Buyer's Signature: ____      Date: ____

TEXAS CREDIT ACCEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 2 of 6

Buyer's Initials ____



The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

Buyer's Initials ____    Exhibit "A-1"

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.** This provision applies to this contract only if the motor vehicle financed in this contract was purchased for personal, family, or household use.

In this box only, the word "you" refers to the Buyer.

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

CONSUMER CREDIT COMMISSIONER NOTICE. To contact Credit Acceptance Corporation about this account, call 1-(800)-634-1506. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207; (800) 538-1579; www.occc.state.tx.us, and can be contacted relative to any inquiries or complaints.

**ARBITRATION:** This Contract contains an Arbitration Clause on Page 6 that states you and I may elect to resolve any dispute by arbitration and not by court action. By signing this Contract below and agreeing to the terms of this Contract, I confirm that I have read, understand and agree to the terms and conditions in the Arbitration Clause.

Any change to this contract must be in writing. Both you and I must sign it. No oral changes to this contract are enforceable.

Sign ➡ *eSigned By:* *Stephanie J Larue* Aug 20, 2016 4:16:22 PM EDT

Buyer _____   Co-Buyer _____

**CONSUMER WARNING**

**NOTICE TO BUYER - I WILL NOT SIGN THIS CONTRACT BEFORE I READ IT OR IF IT CONTAINS ANY BLANK SPACES. I AM ENTITLED TO A COPY OF THE CONTRACT I SIGN. UNDER THE LAW, I HAVE THE RIGHT TO PAY OFF IN ADVANCE ALL THAT I OWE AND UNDER CERTAIN CONDITIONS MAY OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. I WILL KEEP THIS CONTRACT TO PROTECT MY LEGAL RIGHTS.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT**

I AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. I CONFIRM THAT BEFORE I SIGNED THIS CONTRACT, YOU GAVE IT TO ME, AND I WAS FREE TO TAKE IT AND REVIEW IT.

Sign ➡ *eSigned By:* *Stephanie J Larue* Aug 20, 2016 4:16:22 PM EDT    08/20/2016    AUTO NATIONS INC    08/20/2016

Buyer _____   Date    Seller *eSigned By:* *Wayne Hernandez* Aug 20, 2016 4:20:08 PM EDT   Date    Sign ⬅

Co-Buyer _____   Date    By _____   AGENT

THIS CONTRACT IS NOT VALID UNTIL YOU AND I SIGN IT.

**NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions as set forth below on this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.**

Sign ➡ Seller: AUTO NATIONS INC _____   By: *eSigned By:* *Wayne Hernandez* Aug 20, 2016 4:20:08 PM EDT   Title: _____ AGENT

TEXAS CREDIT ACCEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

**Exhibit "A-1"**

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## OTHER TERMS AND CONDITIONS

**HOW YOU FIGURE THE FINANCE CHARGE**: You figure the Finance Charge using the scheduled installment earnings method as defined by the Texas Finance Code. Under the scheduled installment earnings method, the Finance Charge is figured by applying the daily rate to the unpaid portion of the Amount Financed as if each payment will be made on its scheduled payment date. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**HOW YOU WILL APPLY MY PAYMENTS**: You will apply my payments in the following order:
1. earned but unpaid finance charge and late charges; and
2. to anything else I owe under this agreement.

**HOW YOU CALCULATE MY FINANCE CHARGE REFUND IF I REPAY**: If I prepay in full, I may be entitled to a refund of part of the Finance Charge. You will figure the Finance Charge refund by the scheduled installment earnings method as defined by the Texas Finance Commission rule.

**INTEREST AFTER MATURITY**: If I don't pay all I owe when the final payment becomes due, or I do not pay all I owe if you demand payment in full under this contract, I will pay an interest charge on the amount that is still unpaid. That interest charge will be the higher rate of 18% per year or the maximum rate allowed by law, if that rate is higher. The interest charge for this amount will begin the day after the final payment becomes due.

**SECURITY INTEREST**. To secure all I owe on this contract and all my promises in it, I give you a security interest in:
- the motor vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
- all insurance proceeds and other proceeds received for the motor vehicle;
- any insurance policy, service contract or other contract financed by you and any proceeds of those contracts; and
- any refunds of charges included in this contract for insurance, or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show your security interest in the motor vehicle.

**USE AND TRANSFER OF THE MOTOR VEHICLE**: I will not sell or transfer the motor vehicle without your written permission. If I do sell or transfer the motor vehicle, this will not release me from my obligations under this contract, and you may charge me a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). I will promptly tell you in writing if I change my address or the address where I keep the motor vehicle. I will not remove the motor vehicle from Texas for more than 30 days unless I first get your written permission.

**CARE OF THE MOTOR VEHICLE**: I agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. I will timely pay all taxes, fines, or charges pertaining to the motor vehicle. I will keep the motor vehicle in good repair. I will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. I must pay all I owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, you may pay the third party any cost required to free the motor vehicle from all liens or claims. You may immediately demand that I pay you the amount paid to the third party for the motor vehicle. If I do not pay this amount, you may repossess the motor vehicle and add that amount to the amount I owe. If you do not repossess the motor vehicle, you may still demand that I pay you, but you cannot compute a finance charge on this amount.

**AGREEMENT TO KEEP MOTOR VEHICLE INSURED**: I agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover your interest in the vehicle.

**YOUR RIGHT TO PURCHASE REQUIRED INSURANCE IF I FAIL TO KEEP THE MOTOR VEHICLE INSURED**: If I fail to give you proof that I have insurance, you may buy physical damage insurance. You may buy insurance that covers my interest and your interest in the motor vehicle, or you may buy insurance that covers your interest only. I will pay the premium for the insurance and a finance charge at the contract rate. If you obtain collateral protection insurance, you will mail notice to my last known address shown in your file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS**: I must use physical damage insurance proceeds to repair the motor vehicle, unless you agree otherwise in writing. However, if the motor vehicle is a total loss, I must use the insurance proceeds to pay what I owe you. I agree that you can use any proceeds from insurance to repair the motor vehicle, or you may reduce what I owe under this contract. If you apply insurance proceeds to the amount I owe, they will be applied to my payments in the reverse order of when they are due. If my insurance on the motor vehicle or credit insurance doesn't pay all I owe, I must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to me.

**RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES**: If you get a refund of insurance or service contract charges, you will apply it and the unearned finance charges on it in the reverse order of the payments to as many of my payments as it will cover. Once all amounts owed under this contract are paid, any remaining refunds will be paid to me.

**CANCELLATION OF OPTIONAL INSURANCE AND SERVCE CONTRACTS**: This contract may contain charges for insurance or service contracts or for services included in the cash price. If I default, I agree that you can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what I owe or repair the motor vehicle.

**APPLICATION OF CREDITS**: Any credit that reduces my debt will apply to my payments in the reverse order of when they are due, unless you decide to apply it to another part of my debt. The amount of credit and all finance charge or interest on the credit will be applied to my payments in the reverse order of my payments.

**LATE CHARGE**: I will pay you a late charge as agreed to in this contract when it accrues.

**DEFAULT**: I will be in default if:
- I do not pay any amount when it is due;
- I break any of my promises in this agreement;
- I allow a judgment to be entered against me or the collateral; or
- I file bankruptcy, bankruptcy is filed against me, or the motor vehicle becomes involved in a bankruptcy.

If I default, you can exercise your rights under this contract and your other rights under the law.

TEXAS CREDIT ACCEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 4 of 6

Buyer's Initials _____ SJL

Buyer's Initials _____

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

Exhibit "A-1"

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## OTHER TERMS AND CONDITIONS (cont.)

**YOUR RIGHT TO DEMAND PAYMENT IN FULL**: If I default, or you believe in good faith that I am not going to keep any of my promises, you can demand that I immediately pay all that I owe. You don't have to give me notice that you are demanding or intend to demand immediate payment of all that I owe.

**IF YOU DEMAND I PAY ALL I OWE**: If you demand that I pay you all that I owe, you will give me a credit of part of the Finance Charge as if I had prepaid in full.

**STARTER INTERRUPTION DEVICE AND GPS**: I understand and agree that if I am in default, you may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the motor vehicle to prevent the motor vehicle from starting and/or to locate the motor vehicle when permissible law and the terms of this contract allow you to repossess the motor vehicle. I agree that if the motor vehicle is disabled, I will need to cure my default in order to restart the motor vehicle. I acknowledge that I have been provided with a toll free telephone number that I may call, no more than once per month, if the motor vehicle is disabled but I need an emergency activation which will allow the motor vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**REPOSSESSION** : If I default, you may repossess the motor vehicle from me if you do so peacefully. If any personal items are in the motor vehicle, you can store them for me and give me written notice at my last address shown on your records within 15 days of discovering that you have my personal items. If I do not ask for these items back within 31 days from the day you mail or deliver the notice to me, you may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**MY RIGHT TO REDEEM**: If you take my motor vehicle, you will tell me how much I have to pay to get it back. If I do not pay you to get the motor vehicle back, you can sell it or take other action allowed by law. My right to redeem ends when the motor vehicle is sold or you have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE**: If I don't pay you to get the motor vehicle back, you can sell it or take other action allowed by law. You will send me notice at least 10 days before you sell it. You can use the money you get from selling it to pay allowed expenses and to reduce the amount I owe. Allowed expenses are expenses you pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, you will pay it to me unless you must pay it to someone else. If the money from the sale is not enough to pay all I owe, I must pay the rest of what I owe you plus interest. If you take or sell the motor vehicle, I will give you a certificate of title and any other document required by state law to record transfer of title.

**COLLECTION COSTS**: If you hire an attorney who is not your employee to enforce this contract, I will pay reasonable attorney's fees and court costs as the applicable law allows.

**TRANSFER OF RIGHTS**: You may transfer this contract to another person. That person will then have all your rights, privileges, and remedies.

**SELLER'S DISCLAIMER OF WARRANTIES**: Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the motor vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the motor vehicle that the motor vehicle manufacturer may provide.

**LEGAL LIMITATIONS ON YOUR RIGHTS**: If you don't enforce your rights every time, you can still enforce them later. You will exercise all of your rights in a lawful way. I don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all your other acts.

**INTEGRATION AND SEVERABILITY CLAUSE**: This contract contains the entire agreement between you and me relating to the sale and financing of the motor vehicle. If any part of this contract is not valid, all other parts stay valid.

**APPLICABLE LAW**: Federal and Texas law apply to this contract.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein,to **CREDIT ACCEPTANCE CORPORATION** ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

TEXAS CREDIT ACCEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 6

Buyer's Initials _____
Buyer's Initials _____

**Exhibit "A-1"**

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ARBITRATION CLAUSE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com ; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

TEXAS CREDIT ACCEPTANCE CORPORATION (04-14)
© 2012 - 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 6 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 08/20/2016

Buyer's Initials _____  SJL

Buyer's Initials _____  Exhibit "A-1"

Case 4:19-cv-01039   Document 15-1   Filed on 05/01/19 in TXSD   Page 9 of 9



0047374994-1

Credit
Acceptance
*We change lives!*

# DECLARATION ACKNOWLEDGING ELECTRONIC SIGNATURE PROCESS

**ACCOUNT #** ▮1513                                                     **LOT #** Q2G

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| STEPHANIE J LARUE | N/A | AUTO NATIONS INC<br>6004 N SHEPHERD DR STE A<br>HOUSTON, TX 77091 |

| | | Year and Make | Model and Body Style | Color | Vehicle Identification Number |
|---|---|---|---|---|---|
| | Used | 2012 BMW | X5 4D SAV | BLACK | 5UXZV8C54CL425611 |

## BUYER DECLARATION

By signing below, I, STEPHANIE J LARUE        and/or  N/A                    (Buyer) hereby state that:

1. I read, understood, and agreed to the eSign Consent form and consented to use electronic signatures to sign all documents necessary to process a retail installment transaction with the Seller named above.

2. I was given the opportunity to review a paper version of the retail installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents.

3. I was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied my e-signature to the documents with the intent to sign the documents as if I provided my handwritten signature on the documents.

4. I received a fully executed copy of the retail installment contract.

Stephanie Larue 08/20/2016                    _____
Signature of Buyer          Date            Signature of Buyer                Date

## SELLER DECLARATION

By signing below, the Seller solemnly declares and affirms under the pains and penalties of perjury, as follows:

1. I am an authorized representative of Seller and am knowledgeable about the retail installment transaction between Seller and the Buyer(s) named above.

2. The Buyer was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied his/her e-signature to the documents, and I witnessed the Buyer applying their electronic signature to the documents.

3. I understand Credit Acceptance Corporation is relying on this declaration in accepting for assignment the electronically signed retail installment contract between Seller and Buyer.

Seller: AUTO NATIONS INC        By: _____        Title: Agent  Date: 08/20/2016

E-Sign Declaration (Ver. 12/14)
© 2014 Credit Acceptance Corporation. All Rights Reserved

**Exhibit "A-2"**